UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMANDIE S BURGOS,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK COVELLO,<br><br>Defendant. | Case No. 23-cv-01077-HSG<br><br>**ORDER DENYING PETITION FOR HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

Petitioner Normandie S. Burgos filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction and sentence in Contra Costa County Superior Court. Dkt. No. 1 ("Pet."). Petitioner is currently serving an aggregate sentence of 255 years to life imprisonment for dozens of sex offenses against two minors. Respondent has filed an answer, Dkt. No. 14 ("Answer"), and Petitioner has filed a traverse, Dkt. No. 16 ("Traverse"). The Court has carefully considered the briefs submitted by the parties, and **DENIES** the petition for the reasons detailed below.

## I.   PROCEDURAL HISTORY

On May 2, 2019, a jury in Contra Costa County Superior Court found Petitioner guilty of lewd acts upon a minor; forcible oral copulation upon a minor over 14 years of age; oral copulation of a person under 16; forcible sodomy upon a victim 14 years of age or older; sodomy of a person under 16; sodomy of a person under 18; and oral copulation of a person under 18. Dkt. No. 15-4, Ex. 1 at 565–81.[1]  Petitioner was sentenced to an aggregate term of 255 years to life across a total of 60 counts. Dkt. No. 15-5, Ex. 1 at 880.

---

[1] For ease of reference, the Court refers to the internal pagination of this document. The Court uses the PDF pagination for all other documents.

On April 5, 2022, the California Court of Appeal reversed the conviction on six counts that were lesser included offenses of other charges. *See* Dkt. No. 15-12, Ex. 7 at 9. In all other respects, the California Court of Appeal affirmed the judgment. *See id.* at 12. On June 15, 2022, the California Supreme Court denied Petitioner's petition for review. *See* Dkt. No. 15-13, Ex. 9 at 49. Petitioner then filed this federal petition for writ of habeas corpus on March 9, 2023. Dkt. No. 1.

## II.   BACKGROUND

The following factual background is taken from the April 5, 2022 opinion of the California Court of Appeal:[2]

> The People charged Burgos with 60 sex offenses involving John Doe One and John Doe Two, youths who were students at Burgos's tennis academy. The charges included forcible sodomy upon a minor (Pen. Code, § 286, subd. (c)(2)(C)); sodomy upon a minor (§ 286, subds. (b)(1), (b)(2)); forcible oral copulation upon a minor (former § 288a, subd. (c)(2)(C), renumbered effective January 1, 2019 as § 287, subd. (c)(2)(C) (Sen. Bill No. 1494 (2017-2018 Reg. Sess.)), Stats. 2018, ch. 423, § 49); oral copulation of a minor (former § 288a, subds. (b)(1), (b)(2), renumbered effective January 1, 2019 as § 287, subds. (b)(1), (b)(2)); and lewd conduct upon a minor (§ 288, subd. (c)(1)).
>
> At trial, John Doe One and John Doe Two each provided detailed testimony that Burgos, their tennis coach, touched them sexually and pressured them into engaging in sex acts with him beginning when they were 14 years old. Burgos intimated there would be consequences if they refused him, such as withholding mentorship or coaching, tennis equipment, plane tickets for tennis tournaments, lessons, or practice time. According to John Doe One, Burgos treated him more harshly or critically during practice when he refused to engage in sexual acts with him.
>
> The prosecution also presented evidence obtained when, with the help of police, John Doe One wore recording devices during meetings with Burgos. In a video recording played for the jury, after John Doe One brought up their sexual relationship, Burgos said their relationship was not about the sex, but the chemistry was right between them and the "intensity level was so awesome." John Doe One asked if he was the only one that Burgos had sex with, and Burgos replied, "[y]eah." John Doe One told him, "I want to have that good sex back. I really - really miss that." Burgos responded, "[y]eah me too." After John Doe One said that "what made the sex so great" was that they were "connected

---

[2] The Court has independently reviewed the record as required by AEDPA. *Nasby v. McDaniel*, 853 F.3d 1049, 1055 (9th Cir. 2017). Based on the Court's independent review, the Court finds that it can reasonably conclude that the state court's summary of facts is supported by the record and that this summary is therefore entitled to a presumption of correctness, unless otherwise indicated in this order. *See Taylor v. Maddox*, 366 F.3d 992, 999–1000 (9th Cir. 2004), *overruled on other grounds by Cullen v. Pinholster*, 563 U.S. 170, 185 (2011).

perfectly," Burgos replied, "[w]ell I'm pretty good too." John Doe One said, "I really liked . . . when I was inside of you. I really, I mean, that's when I felt the deepest connection. I mean, is that?" Burgos responded, "[y]eah." Burgos added, "I let you do stuff to me that I don't let anybody do to me."

When Burgos testified, his attorney did not ask him whether he touched John Doe One sexually or had sex with him. On cross examination, however, Burgos denied having sex with John Doe One or touching him sexually. With respect to the recorded conversation with John Doe One, Burgos testified that he responded "yeah" to John Doe One's questions because he felt intimidated and was raised to avoid conflict.

Burgos testified that he never touched John Doe Two's genitals, he never performed oral sex on him, and he never tried to place John Doe Two's hand on Burgos's penis. Burgos never threatened to cut off lessons with John Doe Two if he did not submit to sex acts with him. He likewise denied threatening to cut off tennis opportunities for John Doe One if he refused to have sex with him. Due to his hemorrhoid condition, Burgos had not been sexually active since 2010 (prior to the time span of the charges).

*See* Dkt. No. 15-12, Ex. 7 at 2–4.

### III. LEGAL STANDARD

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court

3

decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

When a federal claim has been presented to a state court and the state court has summarily denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (one-sentence order denying habeas petition analyzed under § 2254(d)). Accordingly, in reviewing the habeas claims not addressed by the state appellate court, this Court follows the Supreme Court's direction and "determine[s] what arguments or theories . . . could have supported" the California Supreme Court's rejection of the federal claim, and then gives deference to those arguments or theories under AEDPA. *Id.* at 102.

IV.   **DISCUSSION**

    A.   ***McCoy* Claim**

Petitioner claims that he was denied his Sixth Amendment right to choose the objective of his defense, in violation of the Supreme Court's holding in *McCoy v. Louisiana*¸ 584 U.S. 414 (2018). *See* Traverse at 7. Specifically, Petitioner argues that his attorney implicitly conceded against his wishes that he was guilty of the non-forcible sex crimes. *See id.* at 6. The California Court of Appeal denied his claim as follows:

4

### A.

Under *McCoy v. Louisiana* (2018) 584 U.S. [414] (*McCoy*), a defense attorney may not concede her client's guilt when the client has instructed the attorney not to do so. Burgos argues his attorney violated *McCoy* by conceding that he engaged in sexual activity with John Doe One. We find no error.

#### 1.

In his opening statement, Burgos's attorney did not deny that Burgos had sex with John Doe One and did not offer any specific argument that the prosecution's evidence failed to establish that Burgos committed the non-forcible sex offenses. However, the attorney also did not explicitly concede that Burgos was guilty. Rather, he focused on refuting the prosecution's case that Burgos had committed forcible sex crimes against John Doe One, which carried the most severe penalties.

In so doing, the attorney referred to John Doe One's allegations as "facts" and, in multiple instances, failed to use words like "alleged" to qualify his discussion of the prosecution's evidence. For example, he stated, "[e]ssentially what this case is going to show you is that [John Doe One] . . . had sex with Mr. Burgos in exchange for real and tangible benefits." Although he did not qualify every reference to the prosecution's evidence, he did preface his summary of that evidence by explaining that "I'm starting with some examples of things you're going to hear from" John Doe One. He was discussing "what [John Doe One] claims happened between himself and Mr. Burgos." He later repeated that "this is all according to [John Doe One's] own statements."

The attorney stated that the jurors will "have the option of deciding . . . of course, has the evidence proved anything at all but, ultimately, has the evidence proved beyond a reasonable doubt . . . the elements of forcible sex crimes . . . and if you find that they have not, you will have the option of finding that Mr. Burgos, you know, committed non-forcible versions of exactly the same act." At the end of his opening remarks, he told the jury: "So that's a little outline, ladies and gentlemen, of the facts you're going to hear and the law that applies to them and at the end of this case, I'm going to come back and give you my explanation in the closing argument of why it is that Mr. Burgos is not guilty and ask you to return those verdicts."

After the opening statements and outside the presence of the jury, the court raised the McCoy issue. The court noted that although counsel did not explicitly say Burgos was guilty of nonforcible sex offenses, jurors may have thought that he implied it. The court said this was a "totally rational strategy," but it wanted to determine for the record whether Burgos and his attorney had discussed the strategy and whether Burgos agreed with it. The attorney said he had discussed it at length with Burgos, and, while Burgos does not concede guilt to any charge, "he knows the strategy, [and] he agrees with the strategy."

The court then spoke directly with Burgos. It did not mince its words. The court explained that, in its view, while his counsel did not concede guilt expressly, the jury may have understood that Burgos was contesting only the charges that require force, and not the charges that do not require force. The court emphasized that he (Burgos) is entitled to make the decision whether to concede guilt, not his attorney. The court asked whether

5

Burgos had discussed the strategy with his attorney and agreed to it.

Burgos confirmed he understood how the jury might have construed the opening statement, and he was not willing to concede guilt, "[b]ut I do agree with [counsel's] strategy." As the discussion progressed, Burgos asked the court whether it was possible for his attorney to "clarify" that he is not conceding guilt. The court said that they would not redo the opening statements but that counsel would be able to clarify it later, such as in his closing argument.

Accordingly, defense counsel began his closing argument with an unequivocal statement that "Burgos is not guilty of any of these crimes. His plea of not guilty is a complete denial of the truth of the charges. [Burgos] testified under oath that he had no sexual touching of either of the accusers. So that's a starting point. He didn't do any of this." Counsel then argued that "there are a number of reasons to doubt the v[e]racity of what the evidence is that you've heard about any sexual touchings at all," and he methodically went through the reasons one by one.

Although defense counsel proceeded to focus on the argument that the prosecution had not met the elements for the forcible sex charges, he explained that the argument was a fallback position: "even if in this case you reach the point of accepting as true every factual assertion that they made, you still have to decide if what they described is a forcible sex crime, okay?" Counsel emphasized it was ultimately up to the jury to decide whether "to accept all [of] what [John Doe One and John Doe Two] said or some of what they said or none of what they said."

**2.**

The Sixth Amendment protects a criminal defendant's right to maintain his innocence or to concede his guilt. (*McCoy*, *supra*, 584 US at p. [422].) "Defense counsel can make strategic choices regarding how best to achieve a defendant's objectives, but the defendant chooses those objectives." (*People v. Frederickson* (2020) 8 Cal.5th 963, 993.) Once a defendant instructs his attorney to assert innocence, the attorney cannot override that objective by conceding guilt. (*McCoy*, *supra*, 584 U.S. at p. [422])

But there is no *McCoy* issue unless the record demonstrates that, having discussed the client's objective of maintaining innocence, the attorney then overrides it. (See *In re Smith* (2020) 49 Cal.App.5th 377, 388 (*Smith*).) There is no categorical constitutional bar on an attorney conceding a defendant's guilt. (*Florida v. Nixon* (2004) 543 U.S. 175, 178.) Counsel is obligated to consult with the client on important tactical decisions such as a concession but is not required to obtain the client's express consent. (*Id.* at pp. 187, 189.) The defendant must communicate his objective to his counsel. (*McCoy*, *supra*, 584 U.S. at p.[423]; *People v. Franks* (2019) 35 Cal.App.5th 883, 891.) He must do so *before* counsel makes the concession. (*Smith*, *supra*, 49 Cal.App.5th at pp. 389-390.) We note, moreover, these cases can present subtle situations, such as a partial or implied concession. If the record does not show that the defendant expressed to counsel his disagreement with such a strategy, the reviewing court has no basis to find that counsel overrode the defendant's objective. (*See ibid.*; *People v. Villa* (2020) 55 Cal.App.5th 1042, 1055-1056.)

This is where Burgos's argument founders. The trial court candidly explained to Burgos

> that, in his opening statement, his attorney appeared to concede, at least impliedly, that Burgos had sexual contact with John Doe One as counsel focused on a fallback argument that Burgos used no force. The court specifically asked Burgos and his attorney if they had discussed this strategy in advance and if Burgos agreed to it. Both said that they had discussed it and that Burgos did agree to it. Burgos then added that he wanted his attorney to clarify more explicitly that he is innocent of all charges, and the attorney did so in his closing argument. We have no basis to find a disagreement between Burgos and his attorney when, in fact, both of them reassured the trial court that they were on the same page.
>
> The real problem here is the inherent tension in Burgos's strategy, which simultaneously asserted his innocence (no sex at all) and a fallback argument (if there was sex, it was consensual). By its nature, the fallback argument undercut his claim to innocence. Particularly given the recorded conversation in which Burgos admitted having sex with John Doe One, the approach made sense. But having told the trial court that he discussed and approved this strategy, Burgos cannot now argue otherwise. We find no *McCoy* error.

*See* Dkt. No. 15-12, Ex. 7 at 5–9.

### i. Legal Standard

While "[t]rial management is the lawyer's province[,] . . . [s]ome decisions . . . are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *McCoy v. Louisiana*, 584 U.S. at 422. Counsel must "develop a trial strategy and discuss it with her client," and she may explain why "in her view, conceding guilty would be the best option." *Id.* at 423. But a client's decision to maintain innocence is a choice "about what the client's objectives in fact *are*," not "how best to *achieve* a client's objectives." *Id.* at 422 (emphasis in original). "Presented with express statements of the client's will to maintain innocence . . . counsel may not steer the ship the other way." *Id.* at 424.

Because an admission of a client's guilt over the client's express objectives implicates "a defendant's Sixth Amendment-secured autonomy," it is a structural error that falls outside the Supreme Court's ineffective-assistance-of-counsel jurisprudence and is "not subject to harmless-error review." *Id.* at 426–27. "Such an admission blocks the defendant's right to make the fundamental choices about his own defense" and poses immeasurable harm, as a "jury would almost certainly be swayed by a lawyer's concession of his client's guilt." *Id.* at 428.

But a defendant who "never verbally approved or protested counsel's proposed approach" cannot show any violation of his right to determine his own defense objective, even if he later

7

disagrees with his counsel after the trial. *McCoy*, 584 U.S. at 424 (quoting *Florida v. Nixon*, 543 U.S. 175, 181 (2004)) (internal quotation marks omitted). In addition, counsel does not "interfere with the objective of the defense by arguing alternative theories if he does so in the pursuit of acquittal," since "an alternative argument does not amount to a concession of guilt." *Christian v. Thomas*, 982 F.3d 1215, 1225 (9th Cir. 2020).

### ii. Analysis

The California Court of Appeal found no *McCoy* error in the proceedings in the trial court. That conclusion was not contrary to or a misapplication of clearly established law or based on an unreasonable determination of the facts.[3]

As the California Court of Appeal held, Petitioner did not clearly and expressly protest his attorney's strategy during trial. There is no *McCoy* violation if a defendant "complain[s] about [counsel's] admission of his guilt only after trial." *See McCoy*, 584 U.S. at 424. In *McCoy*, the defendant "opposed [his lawyer's] assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court." *Id.* Here, after opening statements the trial judge specifically verified on the record that Petitioner was aware that his attorney's comments in the opening statement could be understood to imply Petitioner's guilt of the non-forcible crimes, and Petitioner acknowledged that he knew about counsel's approach and confirmed that "I do agree with [counsel's] strategy." *See* Dkt. No. 15-6, Ex. 2 at 351–54; Dkt. No. 15-12, Ex. 7 at 5–6; Traverse at 13–14. Petitioner asked the trial judge if his counsel could clarify that he was not conceding guilt, which counsel did. Dkt. No. 15-6, Ex. 2 at 354, 1124. Where, as here, there is "no evidence [defendant] opposed this strategy," there is no violation of *McCoy*. *See Jurado v. Davis*, 12 F.4th 1084, 1101 (9th Cir. 2021). The California Court of Appeal reasonably applied *McCoy*'s controlling precedent, and there also was no unreasonable determination of the facts.

Additionally, the Ninth Circuit has held that there is no *McCoy* error where an attorney

---

[3] The California Court of Appeal rejected Petitioner's claim in a reasoned opinion, so this Court looks through the California Supreme Court's silent denial of this claim and reviews that last reasoned opinion.

argues a fallback theory that involves a partial concession as an alternative if the jury rejects the defendant's innocence. *See Christian*, 982 F.3d at 1225 (finding an attorney that "repeatedly and explicitly prefaced his self-defense argument as relevant only if the jury concluded that [defendant] had stabbed [the victim]" did not violate defendant's desire to plead not guilty to the crimes). Following discussion with the trial judge about how counsel's opening argument might be understood to implicitly concede guilt, and at Petitioner's request, Petitioner's counsel clarified that he was not conceding guilt, beginning his closing statement by explaining that "[Petitioner] is not guilty of any of these crimes." Dkt. No. 15-6, Ex. 2 at 1124. Counsel emphasized that he was going to "first talk about the reasons that exist to doubt that any sex crimes happened at all," and he stated that his alternative theory that the sexual acts were consensual was a fallback position to be considered "even if you [the jury] accept as true every single thing that they said." *Id.* at 1125. The Court of Appeal recognized the "inherent tension" of claiming innocence while simultaneously asserting a fallback claim that the sex was consensual, but it noted that such a strategy "made sense" given the recorded admission of engaging in sexual activities with a minor. Dkt. No. 15-12, Ex. 7 at 9. The Court of Appeal reasonably concluded that, absent a showing that Petitioner disagreed with this strategy, there was no *McCoy* violation.

## V.     CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of

appealability will be denied.

## VI. CONCLUSION

The petition for a writ of habeas corpus is **DENIED**, Dkt. No. 1, and a certificate of appealability is **DENIED**. The Clerk shall enter judgment in favor of Respondent and close the case.

**IT IS SO ORDERED.**

Dated: 11/6/2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge